# IN THE UNITED STATES DISTRICT COURT FOR THE
# EASTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| STEVEN L. WILLIAMS, | ) |
| Plaintiff, | ) |
| v. | ) Case No. CIV-06-327-KEW |
| MICHAEL J. ASTRUE,<br>Commissioner of Social<br>Security Administration, | ) |
| Defendant. | ) |

## OPINION AND ORDER

Plaintiff Steven L. Williams, (the "Claimant") requests judicial review of the decision of the Commissioner of the Social Security Administration (the "Commissioner") denying Claimant's application for disability benefits under the Social Security Act. Claimant appeals the decision of the Administrative Law Judge ("ALJ") and asserts that the Commissioner erred because the ALJ incorrectly determined that Claimant was not disabled. For the reasons discussed below, it is the finding of this Court that the Commissioner's decision should be and is REVERSED AND REMANDED for further proceedings.

### Social Security Law and Standard of Review

Disability under the Social Security Act is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment. . ." 42 U.S.C. § 423(d)(1)(A). A claimant is disabled under the Social Security Act "only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy. . ." 42 U.S.C.

§423(d)(2)(A). Social Security regulations implement a five-step sequential process to evaluate a disability claim. *See*, 20 C.F.R. §§ 404.1520, 416.920.[1]

Judicial review of the Commissioner's determination is limited in scope by 42 U.S.C. § 405(g). This Court's review is limited to two inquiries: first, whether the decision was supported by substantial evidence; and, second, whether the correct legal standards were applied. Hawkins v. Chater, 113 F.3d 1162, 1164 (10th Cir. 1997)(citation omitted). The term "substantial evidence" has been interpreted by the United States Supreme Court to require "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401 (1971) (quoting Consolidated Edison Co. v. NLRB, 305 U.S. 197, 229 (1938)). The court may not re-weigh the evidence nor substitute its discretion for that of the agency. Casias v. Secretary of Health & Human Servs., 933 F.2d 799, 800 (10th Cir. 1991). Nevertheless, the court must review the record as a whole, and the "substantiality of the evidence must take into account whatever in the record fairly detracts from its weight." Universal Camera Corp. v. NLRB, 340 U.S. 474, 488 (1951); *see also*, Casias, 933 F.2d at 800-01.

**Claimant's Background**

---

[1] Step one requires the claimant to establish that he is not engaged in substantial gainful activity, as defined by 20 C.F.R. §§ 404.1510, 416.910. Step two requires that the claimant establish that he has a medically severe impairment or combination of impairments that significantly limit his ability to do basic work activities. 20 C.F.R. §§ 404.1521, 416.921. If the claimant is engaged in substantial gainful activity (step one) or if the claimant's impairment is not medically severe (step two), disability benefits are denied. At step three, the claimant's impairment is compared with certain impairments listed in 20 C.F.R. Pt. 404, Subpt. P, App. 1. A claimant suffering from a listed impairment or impairments "medically equivalent" to a listed impairment is determined to be disabled without further inquiry. If not, the evaluation proceeds to step four, where claimant must establish that he does not retain the residual functional capacity ("RFC") to perform his past relevant work. If the claimant's step four burden is met, the burden shifts to the Commissioner to establish at step five that work exists in significant numbers in the national economy which the claimant – taking into account his age, education, work experience, and RFC – can perform. Disability benefits are denied if the Commissioner shows that the impairment which precluded the performance of past relevant work does not preclude alternative work. *See generally,* Williams v. Bowen, 844 F.2d 748, 750-51 (10th Cir. 1988).

2

Claimant was born on April 11, 1967 and was 37 years old at the time of the second hearing before the Administrative Law Judge (ALJ). Claimant completed 14 years of education. He has worked in the past as an air brush artist. Claimant alleges an inability to work beginning on June 15, 2003, due to cervical spondylosis, nerve damage, weakness in the left arm, headaches, anxiety, depression, and allergies.

## Procedural History

On July 17, 2003, Claimant filed for disability insurance benefits under Title II and for supplemental security income pursuant to Title XVI of the Social Security Act (42 U.S.C. § 401, et seq.). The claim was denied initially and on reconsideration. A hearing before ALJ Michael A. Kirkpatrick was held on May 12, 2004 in McAlester, Oklahoma. By decision dated July 22, 2004, the ALJ found that Claimant was not disabled at any time through the date of the decision. On November 19, 2004, the Appeals Council granted Claimant's request for review and remanded the case for a new hearing. A second hearing before ALJ Michael A. Kirkpatrick was held on April 26, 2005 in McAlester, Oklahoma. On July 18, 2005, the ALJ found that Claimant was not disabled at any time through the date of the decision. The Appeals Council denied the request for review of the ALJ's findings on July 12, 2006. Thus, the decision of the ALJ represents the Commissioner's final decision for purposes of further appeal. 20 C.F.R. § 404.981, 416.1481.

## Decision of the Administrative Law Judge

The ALJ made his decision at step four of the sequential evaluation. He determined that while certain of Claimant's medical conditions were severe, Claimant did not meet a listing and retained the residual functional capacity to perform his past relevant work.

## Errors Alleged for Review

3

Claimant asserts the ALJ committed error in (1) ignoring and inaccurately describing probative medical evidence; (2) substituting his own opinion for the opinion of the treating physician; and (3) discounting the opinion from the treating physician.

**Failure to Discuss Evidence**

Claimant argues the ALJ erred by selectively discussing evidence supporting the denial of benefits while ignoring other evidence contradicting his conclusion. Claimant contends the reports from Dr. Robert Tobias, Dr. T.E. Trow, and Dr. Gregory A. Rogers, as well as MRI findings were inaccurately evaluated.

Claimant was evaluated by Dr. Robert Tobias on September 23, 2003. He presented with complaints related to a prior neck injury from a motor vehicle accident. A previous MRI scan of his neck showed "a bulging disc at C6-7 on the left, but no herniated disc. There was no evidence of stenosis of the canal or other evidence of other neuro impingement." (Tr. 183). He continued to complain of neck pain 4 1/2 years after the accident with pain radiating to his shoulders and scapula with numbness and tingling down the left arm. Claimant did not complain of muscular weakness. He had some difficulty sleeping due to pain and stiffness in his arm at night and suffered from frequent headaches. Id.

Claimant's neurologic examination showed his "[c]ranial nerves II through XII are intact. Pt is alert and oriented X3. Deep tendon reflexes are 2+ and symmetrical. Motor strength of the entire right side is 5/5. Testing of his left side was difficult because of obviously variable effort from one attempt to the next and some very obvious give-way weakness." (Tr.184). Dr. Tobias opined, "[t]o the best of my judgment I believe his muscular strength is 5/5 on the left side also, including grip strength. There are no focal sensory deficits appreciated. Romberg's and Babinski's

4

are negative. Toe and heel waling are normal bilaterally." Id.

Dr. Tobias also performed a musculoskeletal examination in which Claimant's "[h]and skills appear normal. Posture is normal. ROM is normal except as where noted on the ROM sheets. SLR testing is negative bilaterally in the seated and supine positions." Id. Additionally, Dr. Tobias noted that "[t]he patient ambulates with a safe and stable gait at an appropriate speed without the use of assistive devices." Id.

In his assessment, Dr. Tobias found Claimant suffered from "[c]hronic neck pain. No evidence of radiculopathy." Id. However, he opined that Claimant's "symptoms seem out of proportion to the physical findings, especially in that the injury is 4 1/2 years old and there have been no new injuries." Id.

Dr. Tobias completed a Range of Motion Evaluation chart showing claimant's back extension to be 20 degrees with 25 degrees as normal. Back lateral flexion on the left and right was 20 degrees with 25 degrees serving as normal. (Tr. 186). Dr. Tobias noted that Claimant "actively resisted further ROM and shoulder exam." (Tr. 187). Shoulder abduction, left in supination was 120 degrees and right was 140 degrees with 150 degrees considered as normal. Id. Claimant's cervical spine showed extension at 30 degrees with 60 considered as normal, left rotation at 45 degrees with 80 as normal, and right rotation at 45 degrees with 80 as normal. (Tr. 188). Claimant left leg measured at 75 centimeters while his right leg was 77 centimeters. Id.

In discussing Dr. Tobias' report, the ALJ stated "[t]he record includes a September 23, 2003 DDS consultative examination performed by Robert Tobias, M.D. (Exhibit 6F). The results of this consultative examination were not particularly remarkable. Dr. Tobias noted that claimant was not clinically in any distress and that claimant's thought processes were normal. Claimant actively

5

resisted range of motion testing. Despite claimant's pain complaints, the most notable features of his examination were 'very obvious give-away weakness on the left side and the absence of any muscular atrophy.['] Dr. Tobias specifically noted that claimant's hand skills were 'normal'. This examination reflects that claimant retains the ability to grasp and manipulate objects without limitation. Claimant had no joint abnormalities. Claimant walked with a safe, stable, normal paced gait." (Tr. 29). Additionally, the ALJ found that "[c]laimant malingered at the 2003 consultative examination and his allegations continue to be out of proportion to his objective findings." (Tr. 30).

In evaluating the evidence considered by the ALJ, "[t]he record must demonstrate that the ALJ considered all of the evidence, but an ALJ is not required to discuss every piece of evidence." Clifton v. Chater, 79 F.3d 1007, 1010 (10th Cir. 1996) citing Vincent ex rel. Vincent v. Heckler, 739 F.2d 1393, 1394-95 (9th cir. 1984). However, "in addition to discussing the evidence supporting his decision, the ALJ also must discuss the uncontroverted evidence he chooses not to rely upon, as well as the significantly probative evidence he rejects." Id.

Here, the ALJ adequately discussed the opinion from Dr. Tobias and his assessment. Although not specifically articulated, the ALJ clearly rejected the range of motion limitations found on examination based on evidence of malingering. The ALJ's discussion provides substantial evidence to demonstrate that this evidence was considered and the basis for the rejection.

Claimant also argues the ALJ ignored the abnormal findings from Dr. T.E. Trow. Dr. Trow's medical records document two visits. On July 30, 2003, Claimant presented with complaints of a panic attack after a traffic incident that revived memories of a prior motor vehicle accident. Claimant continued to experience fatigue and frequent voiding. On examination, Dr. Trow noted that Claimant moved with difficulty. He was diagnosed with: (1) Subdinical UTI; (2) panic attacks;

6

and (3) insomnia. (Tr. 191).

On October 14, 2003, Claimant made multiple complaints including severe anxiety and an obvious adjustment disorder with depression. He had progressive neck pain with stiffness since the motor vehicle accident in 1999. A previous MRI showed a broad based disc bulge at C6-7 without surgery. Claimant reported some stiffness and decreased range of motion. He complained of awakening in severe pain. DR. Trow reported that Claimant had an "unusual effect-flat and becomes tearful during encounter." (Tr. 190). Claimant had tenderness in the suboccipital areas at the base of the neck with maximum tenderness in the lower segments of the neck. Flexion and extension were decreased by 50% with bilateral neck rotation reduced by 30% to 40%. Palpable spasms were noted in paracervical area and onto the posterior shoulder. The neurological examination revealed a slight tremor. Claimant was tender of the left radial head and provoked pain upon internal and external rotation. Claimant had a 50% reduction in strength of the left thumb and left wrist with questionable early intrinsic atrophy. Id. Claimant was diagnosed with: "(1) HNP cervical C6-7, by history; (2) cervical muscle spasm; (3) tension type HA; (4) post-traumatic arth., left radial head; (5) neuropathy, left hand- suspect cerv. etiology; (6) adjustment disorder w/ anxiety & depression." Id.

In this case, the ALJ failed to discuss the medical evidence contained in the record, which appears to be both probative and relevant to the ultimate decision as to whether substantial evidence supports a finding of disability. The only acknowledgment of Dr. Trow as a treating source is included in a discussion supporting the rejection of the opinion from Dr. Trow's associate, Dr. Noel Emerson. (Tr. 24). The evidence included within treating physician assessments typically carry significant weight, unless specifically discounted with appropriate reasoning by the ALJ. On

remand, the ALJ shall specifically reference all evidence considered in the formulation of his decision in accordance with the prevailing authority.

Claimant also contends the ALJ erroneously rejected the opinion from Dr. Gregory A. Rogers. Medical records from Dr. Rogers cover the period from August 19, 2004 through January 31, 2005 (Tr. 302-305), March 24, 2005 (Tr. 313-316), and April 25, 2005 (Tr. 321-322). On August 26, 2004, Claimant requested medication for anxiety. Dr. Rogers noted that Claimant was under a lot of stress secondary to his disability problems and his attempts to be certified for disability. Claimant's heart rate and blood pressure were elevated. He was found to be alert, anxious, but cooperative. Dr. Rogers diagnosed anxiety, stress reaction, insomnia, and elevated blood pressure. (Tr. 305). On December 2, 2004, Claimant presented with continuing neck pain which increased with cold weather. On examination, Claimant had suboccipital tenderness in the neck with decreased range of motion, two degrees due to pain. (Tr. 304).

Dr. Rogers completed a Medical Source Statement of Ability To Do Work-Related Activities (Physical) on January 31. 2005. Dr. Rogers opined that Claimant would be limited in frequent or occasional lifting up to ten pounds. He would be affected by standing and/or walking at least two hours in an eight hour workday. Claimant was be able to sit less than six hours in an eight hour workday. He would be limited in the ability to push and/or pull with the upper extremities. He had limited grip strength and the ability to lift what was routine five years ago before the injury. Medical findings supporting his conclusion included the "moderate neural forminal narrowing at C4 2 degrees spondylosis or disc bulge with central spondylosis C5-6 on cervical MRI 1/7/04 Physical Examination."(Tr.308). Postural limitations included only occasional climbing-ramps/stairs/ladder/rope/scaffold, balancing, kneeling, crouching and stooping. Claimant was never

allowed to crawl. (Tr. 308). Manipulative limitations included reaching in all direction (including overhead) and handling (gross manipulation). He was unlimited in fingering (fine manipulation) and feeling (skin receptors). (Tr. 309).

In his decision, the ALJ stated that he had considered the medical evidence from Dr. Gregory Rogers, which included a "Medical Source Statement of Ability to do Work-Related Activities (Physical)." (Tr. 23). The ALJ found that acceptance of Dr. Rogers' assessment would "compel a conclusion that claimant was disabled." Id. He concluded that the assessment was " (1) not well supported by medically acceptable clinical and laboratory diagnostic techniques; and (2) are not consistent with other substantial medical and non-medical evidence of record." Id. Therefore, the ALJ declined to give "controlling weight" to the assessment from Dr. Rogers. Id.

After declining to attribute controlling weight to the opinion from Dr. Rogers, the ALJ discussed the standard of deference to be given to the opinion. The ALJ found that although Dr. Rogers "has now established a limited treatment relationship with claimant, that was not the case when he prepared his August 25, 2004 report at the request of claimant and his Social Security attorney. Dr. Rogers first saw claimant only days before his prepared his disability report. In fact, when claimant first presented to Dr.Rogers, which was on August 19, 2004, he was not requesting treatment, but rather claimant specifically stated that what he needed was a 'disability physical.'" (Tr. 25).

Citing 20 C.F.R § 404.1527 and 416.927, the ALJ discussed the weight to be attributed to a "treating source" opinion when the relationship with a physician is "not motivated by medical need for treatment, but simply by desire to obtain a report in support of a claim for disability." (Tr. 25). Under those circumstances, the opinion will then be considered to be from a non-treating source

9

"whose opinion is not potentially entitled to 'controlling weight.'" Id.

To support his determination of the weight attributed to Dr. Rogers' report, the ALJ found "Dr. Rogers reported few objective medical findings to support his opinions" including any "diagnostic tests the results of which would suggest a disabling degree of pain. Id. The ALJ noted that Dr. Rogers was "not a neurosurgeon, or orthopedist, nor is there any evidence [that] Dr. Rogers consulted with any specialists before offering his August (sic) 2004 statement which, in part, attributes functional limitations to psychological factors." Id. The ALJ also stated there was not any "evidence that Dr. Rogers is a specialist in mental disorders." Further, he found that Claimant had exhibited any psychological pathology severe enough to warrant referral for psychiatric treatment.

Claimant's treatment with Dr. Rogers was found to be "on rather an infrequent basis. After August 2004, he did not see claimant again until December 2, 2004, when he saw claimant for a 'general [check] up.' " Id. The ALJ commented on the unlikely nature of the infrequent visits with Dr. Rogers in the event Claimant was experiencing severe disability pain. Id.

In finding that Dr. Rogers conclusions were inconsistent with the objective medical evidence, the ALJ found that the 2004 MRI results "failed to advance a strong case for neurological involvement." Id.

In deciding how much weight to give the opinion of a treating physician, an ALJ must first determine whether the opinion is entitled to "controlling weight." Watkins v. Barnhart, 350 F.3d 1297, 1300, (10th Cir. 2003). An ALJ is required to give the opinion of a treating physician controlling weight if it both: (1) "well-supported by medically acceptable clinical and laboratory diagnostic techniques"; and (2) "consistent with other substantial evidence in the record." Id. (quotation omitted). "[I]f the opinion is deficient in either of these respects, then it is not entitled

to controlling weight." Id.

Even if a treating physician's opinion is not entitled to controlling weight, "[t]reating source medical opinions are still entitled to deference and must be weighed using all of the factors provided in 20 C.F. R. Sec. 404.1527." Id. (quotation omitted). The factors referenced in that section are: (1) the length of the treatment relationship and the frequency of examination; (2) the nature and extent of the treatment relationship, including the treatment provided and the kind of examination or testing performed; (3) the degree to which the physician's opinion is supported by relevant evidence; (4) consistency between the opinion and the record as a whole; (5) whether or not the physician is a specialist in the area upon which an opinion is rendered; and (6) other factors brought to the ALJ's attention which tend to support or contradict the opinion. Id. At 1300-01 (quotation omitted). After consider these factors, the ALJ must "give good reasons" for the weight he ultimately assigns the opinion. 20 C.F.R. § 404.1527(d)(2); Robinson v. Barnhart, 366 F.3d 1078, 1082 (10th Cir. 2004)(citations omitted). Any such findings must be "sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinions and the reason for that weight." Id. "Finally, if the ALJ rejects the opinion completely, he must then give specific, legitimate reasons for doing so." Watkins, 350 F.3d at 1301 (quotations omitted).

In his decision, the ALJ stated "[t]he virtual lack of medically determinable findings goes to the heart of the 'supportability' criterion. Based on limited physician/patient contact with Claimant, Dr. Rogers, in August 2004 was willing to provide Claimant with a disability statement at Claimant's request. After August 2004, Dr. Rogers saw Claimant for a variety of self-limiting minor complaints. On the occasions Dr. Rogers saw Claimant for the complaints Claimant alleges

have resulted in disability, clinical findings were very limited, and, as discussed with some specificity infra, Claimant's diagnostic tests were generally unrevealing. Dr. Rogers saw claimant on a total of only four occasions in and after August 2004 through April 25, 2005 and December 21, 2004, Dr. Rogers saw Claimant for a sore throat. This was Dr. Rogers' only recent treatment contact [notes do reflect Claimant presented on same date for his 'disability papers'; accordingly recorded January 31, 2005 medical findings are limited to Claimant's vital signs] with claimant before completing the January 2005 'Medical Source Statement of Ability to do Work-Related Activities (Physical). (Tr. 26).

The ALJ noted "Dr. Rogers neither referred to reports of individual providers, hospitals, or clinics, nor did he indicate on what basis, if any, his treatment of claimant would support his opinion. Actual findings on physical examinations, x-rays, and MRI's do not suggest an impairment which could reasonably be expected to cause such dramatic and severe functional limitations. In his disability statements, Dr. Rogers made little reference to clinical or diagnostic findings which supported his opinions." (Tr. 26).

The ALJ found that Dr. Rogers' August 25, 2004 statement and his January, 2005 functional assessment appear "to be based in part [on] claimant's subjective complaints which are not fully credible." Id. Further, he found that Dr. Rogers statements "do not merit substantial evidentiary weight under 20 C.F.R. § 404.1527 and 416.927 because they are not supported by appropriate clinical/laboratory findings, because they are inconsistent with the preponderance of the credible evidence of record, including other opinion evidence." Id.

Here, although the ALJ's decision contains specific reasons for the rejection of Dr. Rogers opinion, the basis for rejection of the opinion is not consistent with the evidence as a whole. First,

12

it should be noted that, although Dr. Rogers may not have initially been entitled to the status of a treating source when he saw Claimant for his first visit, he clearly qualified as a treating source by the time he completed the Medical Source Statement of Ability to Do Work-Related Activities (Physical) on January 31, 2005. Further, the ALJ's reliance on the lack of documentary evidence to support the treating physician's opinion is flawed where the ALJ fails to discuss the abnormal findings in diagnostic testing performed in January, 2004.

Lastly, Claimant argues the ALJ erred by ignoring the findings of a January, 2004 MRI scan. The MRI showed "narrowing of the neural foramen at C4 on the right of moderate degree and mild narrowing of the neural foramina bilaterally at C5. Mild central spondylosis at C5 and C6. The neural forminal narrowing at C4 can be due either to spondylosis or disc bulge. The study is considered to be essentially negative otherwise. Structures at the foramen magnum and course and contour of the cervical spinal cord are essentially negative." (Tr. 228).

As previously discussed, the ALJ erred by failing to discuss the MRI results as a part of his decision to attribute a diminished weight to the opinion of the treating physician. On remand, the ALJ shall include a discussion of the results from the MRI.

## Treating Physician Opinion

The ALJ's opinion lacks the specific, legitimate reasons for the rejections of Dr. Rogers opinion. The matter must, therefore, be remanded for further findings consistent with the prevailing case authority.

## Conclusion

The decision of the Commissioner is not supported by substantial evidence and the correct legal standards were not applied. Therefore, this Court finds the ruling of the Commissioner of

Social Security Administration should be and is **REVERSED and the matter REMANDED** for further proceedings consistent with this Order.

DATED this 28th day of August, 2007.

Kimberly E. West
United States Magistrate Judge
Eastern District of Oklahoma